**CASSO v. ASCENSION REALTY CO. et al.**

**No. 1973.**

Court of Appeal of Louisiana.
First Circuit.

June 30, 1939.
Rehearing Granted Sept. 5, 1939.

Walter Lemann, of Donaldsonville, for appellant.

George R. Blum and S. A. LeBlanc, Jr., both of Donaldsonville, for appellee.

DORE, Judge.

This is a petitory action involving two sixty-foot lots opposite Block 78 of the Town of Port Barrow on the east side of State Highway 29, extending to the depth of 150 feet or more eastward to the center line of Bayou Lafourche.

The petition alleges that plaintiff acquired title by authentic act on February 26, 1936, from Mrs. Clara Binnings Jeffery and Mrs. Beauchamp Sharp, a certified copy of the act being made a part of petition; that Mrs. Jeffery and Mrs. Sharp acquired the property as the sole heirs of Mrs. Rhoda Sharp Buford by a duly recorded judgment sending them in possession of her succession; that Mrs. Rhoda Sharp Buford acquired the property as the widow and universal legatee of William W. Buford by a duly recorded judgment sending her into possession of his succession; that William W. Buford acquired the property by a duly recorded patent from the State of Louisiana; and that plaintiff has been disturbed in the possession and ownership of the property by The Ascension Realty Company, a Louisiana Corporation, and by Linden E. Bentley and Mrs. Ella Bentley Arthur, made defendants herein, who pretend to be the possessors of the property and have brought a possessory action against petitioner to be maintained in possession thereof.

The plaintiff prays for judgment recognizing him as full owner of the property and, as such, entitled to undisturbed possession thereof and to abatement of defendants' possessory action.

The answer sets forth that the aforesaid three defendants and one G. Donnaud Bentley, together with the heirs of William W. Buford have been in undisturbed possession of the property for over 30 years; that in 1890 one Charles A. Camp executed a notarial act, a certified copy of which is attached, which was duly recorded, transferring the undivided two-thirds of all his rights, title and interest to his property at Port Barrow, which included the property herein involved, to Dr. William McGalliard and Bernard Lemann, and that William W. Buford appeared and ratified the said act; that on November 26, 1906, by duly recorded act the said William McGalliard and the heirs of the said Bernard Lemann transferred to The Ascension Realty Company, the defendant herein, a part of the property acquired by them from Camp including the property involved herein; that thereafter the said Ascension Realty Company, the said Buford successors and the said Bentley exercised all rights of possession and ownership, including the payment of taxes and leasing of the property from 1909 to 1929, to the said property in indivision in the proportion of two-thirds to The Ascension Realty Company, one-sixth to the Buford heirs and one-sixth to the Bentleys.

The lower court found that William W. Buford obtained title to the property in question from the State of Louisiana by patent to section 32, T 11 S, R 14 E, of which it is a part, and that plaintiff, having acquired the property by direct chain of title from the said William W. Buford, is the owner thereof. He rendered judgment accordingly in favor of the plaintiff. The defendant, The Ascension Realty Company, has appealed.

Since the Bentleys have not appealed from the judgment, the question as to whether or not they owned a one-sixth undivided interest in the property, as set forth in the answer, is not before us and their rights to such one-sixth interest is considered waived in favor of the plaintiff herein; so that the question before us is, whether or not the defendant, The Ascension Realty Company, is correct in its contention that it is the owner in indivision of a two-thirds interest in the property.

It is shown by the record that William W. Buford acquired all of Section 32, T 11 S, R 14 E, from the State of Louisiana by patent dated February 26, 1883 and that the property involved herein is a part of said section. It is also clearly shown that the plaintiff herein traces his chain of title direct to that of William W. Buford. The case therefore involves the questions:

(1) Was the patent by which Buford acquired the property valid?

(2) If so, did Buford or any of his successors transfer the property prior to the sale to plaintiff?

As to the first question, we agree with the trial judge that since the patent is legal on its face and was duly recorded and since the prescriptive period of six years has long since expired, it must be considered valid and cannot be attacked at this time.

As to the second question, it is the contention of defendant, The Ascension

Realty Company, that the author in title of plaintiff disposed of all his rights, title and interest in an undivided two-thirds of the property to its author in title as a result of two compromise acts marked D-1 and D-2, passed on March 4, 1890 before Edward N. Pugh, Notary Public.

It appears that one Charles A. Camp had acquired by devise from John B. Pittman all or part of the property at Port Barrow covered by the patent to William W. Buford. The property devised to Camp by Pittman was acquired by the latter from Robert Ruffin Barrow by act recorded June 2, 1868 (D–81), the description of the property therein containing the following:

"First: The town property of said R. R. Barrow contained in the site known as Port Barrow consisting of Squares and lots whether improved or unimproved, which may be standing in the name of said Barrow, upon the records of the Parish of Ascension, said property being therein and lying immediately *north* of the Bayou Lafourche, opposite the Town of Donaldsonville, on the west bank of the Mississippi River and embraced between the lines of survey made by V. Sulakowski, civil engineer, and which was incorporated by the legislature of this State."

It is apparent from the foregoing that Pittman acquired from Barrow among other properties, that part of Port Barrow immediately north (west at the point involved) of Bayou Lafourche, which would include the batture property involved in this suit. And since the patent to William W. Buford covered all of Section 32, which included Port Barrow, there naturally arose a conflict with reference to the ownership of the Port Barrow property devised to Camp by Pittman, described hereinabove.

It is obviously this conflict in ownership that gave rise to the compromise acts referred to hereinabove.

In the first of these two acts of compromise Charles A. Camp sold to William M. McGalliard and Bernard Lemann the following described property:

"The undivided two-thirds of all the title and interest of the said Charles A. Camp in and unto that certain tract of land situated in the Parish of Ascension and known as Port Barrow and being the undivided two-thirds of the land divided (devised) by the late John B. Pittman by his last will and testament to said Charles A. Camp and called by him. * * * 'All my property in Port Barrow' said land consist-

ing principally of lots of ground as per plan of said Town of Port Barrow made by V. Sulakowski and of record in the recorder's office of this parish the plan being made a part and portion of this action (act)."

William W. Buford appeared in said court and ratified it, disclaiming any interest in the property transferred.

The second act is a conveyance from Charles A. Camp to William W. Buford of the following property:

"* * * the undivided one third of all of his rights, title, and interest in and unto that certain tract of land situated in the Parish of Ascension, Louisiana, and known as Port Barrow and being the undivided ......third of all land devised by the Late John B. Pittman, in his last will and testament to said Charles A. Camp and called by him in his said will and testament, 'all of my property at Port Barrow' said land consisting principally of lots of ground as per plan of said town (plan of V. Sulakowski)."

It is recited in the latter act that its purpose is to end all differences and litigation affecting the said property and that Buford declares that he receives "the one third of the property herein conveyed in full satisfaction and acquittance of any and all claims of any nature or source whatsoever which he has or may have against the said devised property belonging to said Charles A. Camp and particularly and especially any claim he may have or possess against said property resulting from a certain patent granted him by the State of Louisiana."

It appears clear to us that the property conveyed by the two acts in the proportion of two-thirds to McGalliard and Lemann and one-third to Buford extended to the center line of Bayou Lafourche and necessarily included the property in litigation herein and in the related case of Joseph A. Schoeny v. Ascension Realty Company et al., La.App., 190 So. 204. It is true that this batture property is not shown on the map of Sulakowski, made a part of the two acts, as well of the act from Barrow to Pittman, but the map does show that all the property to Bayou Lafourche was included, and the language of the acts is too clear to permit of any other interpretation. The fact that the lots herein involved are not actually shown on the Sulakowski map may be explained by the fact that they were formed by batture which probably was not

in existence at the time of the acts. It is our opinion, therefore, that the property involved herein was held in indivision in the proportion of two-thirds to McGalliard and Lemann and one-third to Buford, after the passing of the two acts.

■ On May 30, 1890, an act of Partition was passed before Edward N. Pugh, Notary, wherein the Port Barrow property was partitioned between McGalliard and Lemann on the one hand, and Buford, on the other. An examination of this act fails to show that the batture property was in any way mentioned therein. It is our opinion, therefore, that the parties remained in indivision as to such batture property.

By act of November 28, 1906, McGalliard and the heirs of Lemann conveyed to The Ascension Realty Company the lots belonging to them in full ownership as a result of the Act of Partition, "together with the undivided two-thirds interest in and to all the batture lands on the Mississippi and Bayou Lafourche," including the batture on the bayou opposite squares 78 and 79, being the property involved in this and the related case of Schoeny v. Ascension Realty Company, et al.

It appears to us, therefore, that The Ascension Realty Company acquired a two-thirds undivided interest in the batture property by proper chain of title, and, from the record, it appears further that it has never relinquished ownership thereof, and that the plaintiff's vendors, as successors of Buford, never owned more than a one-third undivided interest in such property, and could not therefore transfer the whole thereof to the plaintiff. We are fortified in this position in that in the judgment, of date February 10, 1906, sending Mrs. Buford (Mrs. Rhoda J. Sharp) into possession of the property of her husband, in community, the batture rights on the north bank of Bayou Lafourche were not mentioned; likewise, we find that the judgment, of date of March 29, 1911, sending the heirs of Mrs. Rhoda J. Buford (nee Sharp) into possession is also silent as to the batture rights on the north bank of Bayou Lafourche. It was not before the second day of January, 1934, that the heirs of Mrs. Buford sought to claim any batture rights on Bayou Lafourche, while, as stated above, defendant was claiming an undivided two-thirds thereof ever since 1906.

The cases of Maginnis Land & Improvement Co. v. Marcello et al., 168 La. 997, 123 So. 653, and South Louisiana Fair Association v. Robert et al., 3 La.App. 505, cited by plaintiff, are not applicable herein. In these cases, the language of the description of the property was vague and not capable of correct interpretation and naturally the description was limited to that part which was clear, to-wit the part described on the map attached. In the instant case, however, the language itself of the description is clear, and the map is merely an additional aid to the description.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that the plaintiff and defendant, The Ascension Realty Company, be and they are hereby recognized as the owners of the following described property: "Two lots having each sixty feet front along State Highway No. 29 leading from Donaldsonville to Napoleonville, in the Parish of Ascension, Louisiana, on the West or right descending bank of Bayou Lafourche and at the intersection of what is known as Tenth Street of Port Barrow extended (and now presently continued across Bayou Lafourche into the town of Donaldsonville) with said State Highway No. 29 and directly opposite and in an easterly direction from Block No. 78 of the Port Barrow Subdivision; said two lots have an aggregate frontage of One Hundred and Twenty Feet along and on the easterly side of said State Highway No. 29 and extend in depth to the Eastward One Hundred and Fifty Feet or more to the center line of Bayou Lafourche, including all accretion or batture rights belonging to said lots as contained in the original Section 32 of Township 11 South, Range 14 East, in SE Land District of Louisiana, West of the Mississippi River, of which said two lots form a part. Said lots lie immediately on the North side of Tenth Street extended, now a paved highway," in the proportion of one-third to plaintiff and two-thirds to the defendant, The Ascension Realty Company; all the costs of this suit to be borne by the parties litigant in the proportion to their respective rights and interest.

W. CARRUTH JONES, Judge ad hoc, concurs.

LeBLANC, J., recused.

OTT, Judge (dissenting).

Plaintiff claims to be the owner of a tract of land measuring 120 feet on the paved highway leading from Donaldsonville to Napoleonville and extending back east-

wardly 150 feet or more to the center line of Bayou Lafourche—that is to say the tract lies between this highway and Bayou Lafourche, and lies opposite and east of Block No. 78 of the Port Barrow Subdivision. The highway separates this tract from the Port Barrow subdivision and runs along the eastern part of the subdivision where there is designated on the plat of this subdivision a street called Bayou.

Section 32 in which the land in controversy is located was acquired in 1883 by W. Buford from the State by patent. Plaintiff traces his chain of title to the tract through various owners to this patentee. There seems to be little room for dispute as to the validity of the chain of title set up by plaintiff, if Buford, during his life, did not divest himself of title to the tract of land claimed by plaintiff.

It appears from the record that the land lying along Bayou Lafourche included in the plat of Port Barrow, as well as the land lying between the subdivision and the Bayou (which included the land in controversy) was claimed by various persons through titles emanating from the Government long before Buford secured a patent to the land from the State. In 1855 this land was claimed by R. R. Barrow under a title during which year he had the subdivision known as Port Barrow surveyed and a plat made thereof by one Sulakowski, a deputy U. S. engineer, on which plat the said square 78 and the Bayou Street are shown, the tract claimed by plaintiff lying east of said Port Barrow and between Bayou Street shown thereon and the Bayou Lafourche. In fact, there is a strip of land varying in width, running along the west and north bank of the bayou between the bayou and the platted subdivision of Port Barrow, this strip being mostly, if not all, batture formed from the bayou, just how much of this batture was formed in 1855 when the plat was made does not appear from the record.

In the year 1868, R. R. Barrow, who had caused the plat of Port Barrow to be made and filed, sold to one J. B. Pittman, several tracts of land, including all unsold squares and lots in Port Barrow per the survey of Sulakowski, and a piece of land standing in the name of Barrow, lying immediately in the rear of the town of Port Barrow, between the bayou Lafourche and the extension of the upper line of said town which runs from the Mississippi toward the bayou Lafourche, containing one hundred acres

of land, more or less, which piece of land was originally a portion of the plantation of Barrow, purchased of Winter, lying Northeast of Bayou Lafourche, from which was also detached the town of Port Barrow, which was run off into squares and lots by said engineer and a plat thereof was recorded in the recorder's office.

In 1883, Pittman made a will in which he bequeathed "all of my property at Port Barrow" to C. A. Camp.

This was the situation when, on Feb. 15, 1890, Camp, through his attorney in fact, sold to Dr. Wm. McGalliard and Bernard Lemann, "The undivided two-thirds of all the title and interests of said Charles A. Camp in and unto that certain tract of land situated in the Parish of Ascension and known as Port Barrow and being the undivided two thirds of the land divided (devised) by the late John B. Pittman by his last will and testament to said Charles A. Camp and called by him in said last will and testament 'All of my property at Port Barrow' said land consisted principally of lots of ground as per plan of said town of Port Barrow made by V. Sulakowski and of record in the recorder's office of this parish, the plan being made a part and portion of this action(act)".

At the time this sale was made, Buford had a patent to the land contained in the Port Barrow subdivision as shown on the plan as well as the batture land out to the Bayou. Buford joined in the act from Camp to Dr. McGalliard and Lemann and conveyed all of his rights and interest to the undivided two-thirds, particularly his interest arising from said patent. On the same day Buford and Camp signed a separate document in order to compromise their claims respecting the property devised by Pittman to Camp, in which compromise Camp took an undivided two thirds interest and Buford an undivided one third in that tract of land situated in Ascension Parish and known as Port Barrow and being the land devised by Pittman to Camp consisting principally of lots of ground as per plan of said town made by Sulakowski, etc.

On May 30, 1890, a few months after this compromise agreement between Buford and Camp and after the latter had sold his interest in the property to Dr. McGalliard and Lemann, Buford, who owned an undivided one third and McGalliard and Lemann, who owned the other undivided two thirds, entered into a partition agree-

ment whereby they divided all the lots and squares owned by them in indivision in Port Barrow as shown on the plat of same. Nothing was said in said act about any lands lying between said subdivision and Bayou Lafourche.

On November 28, 1906, Dr. McGalliard and the heirs of Bernard Lemann conveyed to the defendant, Ascension Realty Company, the lots and squares in Port Barrow which had been acquired by them in the partition with Buford, and included therein "the undivided two thirds interest in and to all the batture lands on the Mississippi River and Bayou Lafourche" being land fronting on certain squares, including squares 78 and 79. It is by reason of this deed that the realty company is claiming the tract of land in controversy in this suit.

In a petitory action, the plaintiff must make out his title; he cannot rely on the weakness of defendant's title. As already stated, plaintiff traces his title back to Buford, the patentee, and unless Buford parted with two thirds of his interest in the batture land lying between the Bayou and the subdivision of Port Barrow his heirs and successors in title remained the owner of this strip of land and conveyed a good title to the plaintiff. This raises the sole and vital question in the case, that is, did Buford in joining in the deed from Camp to Dr. McGalliard and Lemann conveying a two thirds interest in the lots and squares and the compromise agreement entered into on the same day, convey a two thirds interest in this strip of batture land lying between the bayou and Port Barrow?

Assuming that the land described in the deed from Barrow to Pittman included this batture land on the west and north bank of Bayou Lafourche (and this is not altogether clear) it follows that Pittman acquired whatever right Barrow had to this strip of land between the platted subdivision and the Bayou. Still further assuming that when Pittman bequeathed all of his property at Port Barrow, except one square, to Camp, that this strip of batture was included therein (which is also not altogether clear) the situation then was that both Buford and Camp had a title to the land included in the plat and that included in the strip between the Bayou and the platted lands.

If Camp understood that he was selling to Dr. McGalliard and Lemann in 1890 the batture land composing this strip lying along the Bayou and the River, it does seem that words would have been used to express that intention. But Camp says in the deed that he is selling his undivided two thirds interest in and to the certain tract of land in Ascension Parish *Known as Port Barrow.* He must have known that this strip along the bank of the bayou was not a part of the plan of Port Barrow as he referred to and made that plat a part of his deed and description of the property. It is true that the deed further stated that the land sold was his undivided two thirds of the land devised to him by Pittman in the will and consisted principally of lots of ground as per the plan of Port Barrow made by Sulakowski.

The purpose in making the plan a part of the deed was to serve as a description and identification of the property sold. The reference to the map as a part of the description of the property had the effect of making the description shown on the map a part of the description in the deed to the same extent as though the description had been copied in the deed. Werk v. Leland University, 155 La. 971, 99 So. 716.

If we leave out the description afforded by reference to the plat, there is nothing left in the deed by which it could be inferred that Camp and Buford intended to sell and Dr. McGalliard and Lemann intended to purchase any property outside the property shown on the plan, other than the statement that the land sold consisted *principally* of lots. If the land sold consisted of anything other than lots shown on the plan, there is not a sufficient description thereof in the deed to show what land was sold and therefore not sufficient to divest Buford of his title to any lands not shown on the plan.

If there was any ambiguity in the deed from Camp and Buford as to what property was intended to be sold, the plat or map made part of the deed must control. Maginnis Land & Imp. Co. Ltd. v. Marcello et al., 168 La. 997, 123 So. 653. If the map controls, there is no other property sufficiently described in the deed to serve as the basis of a title to the purchasers.

Not only does the map indicate the intention of Camp and Buford as to what lands were being sold, but the map also indicates what the purchasers thought they were buying as these purchasers and Buford partitioned the land by the map altogether, in which act of partition no reference was made to the ownership of any lands in in-

division other than that shown on the map. Of course, the parties could have intended to partition only the lands on the plan and remain co-workers of the strip between the subdivision and the Bayou, but that seems a rather unlikely and unreasonable assumption.

As I do not think the record shows that Buford ever parted with title to the tract of land in controversy, I think the judgment in favor of plaintiff decreeing him to be owner of the land is correct and should be affirmed, and I respectfully dissent from the majority opinion in the case.